GEORGIA,
Chatham Co.
JUNE, 1809.

Smith
vs
Lloyd and Roe.

*Minutes of Superior Court, letter G. p.* 208.

*June,* 1809.

## SMITH *vs.* LLOYD and ROE.

### IN EQUITY.

By *Charlton,* Judge.

THE complainant alleges in his bill, that some time in June, 1804, he agreed to purchase of *Alexander S. Roe,* (one of the defendants) and *Edward L. Davis,* who were then merchants and copartners in Savannah, an assorted cargo for a West India market. That among other articles, he agreed to purchase of the said *Roe* and *Davis,* 100 barrels of fine flour. That the said *Roe* and *Davis* delivered to him flour of a different quality from that which had been shown to him, and which he had agreed to purchase ; the difference in the value of the flour he had agreed to purchase, and that delivered to him, being one dollar, or one dollar and fifty cents. That on the arrival of the complainant in the West Indies, he suffered a loss of two or four dollars per barrel, in consequence of the bad quality of the flour sold him by *Roe* and *Davis.* That on the return of the complainant to the United States, he came to a settlement with *Roe* and *Davis,* and gave his note to them for the sum of 2040 dollars, subject, however, to a deduction upon a future discovery of errors, as will appear from the receipt given him by *Roe* and *Davis.* That when complainant gave his note, he was informed by *Roe* and *Davis,* that it was to be endorsed by the defendant, *E. Lloyd,* which indorsement would have given a credit in the bank for the use of *Roe* and *Davis.* That before this note became due the complainant was assured by *Roe* and *Davis,* his note was not deposited in bank, nor had it been indorsed by *E. Lloyd,* and that he did upon this assurance,

GEORGIA
Chatham Co.
JUNE, 1809.

Smith
vs.
Lloyd and Roe.

and under the impression of a sense of obligation to *Roe* and *Davis*, endorse other notes for them in bank, which on payment the said *Roe* and *Davis* agreed should be deducted from his note of 2040 dollars, or be considered as accommodation paper. That when this note became due, the complainant did not receive a notice from the bank as is usual ; but on the very last day of grace, or a few minutes before the shuting of the bank, was informed by *Lloyd*, that this note was in the bank, and requested him to settle it. That the compliant enquired of *Alexander S. Roe*, whether his note was in bank, and was told by the said *Roe*, that it was not in bank, nor was it in the possession of *E. Lloyd*. That the complainant reposing confidence in the assurance of *A. S. Roe*, continued to renew his endorsement at bank for *Roe* and *Davis*. That the complainant was informed by *William Lamb*, from whom *Roe* and *Davis* had purchased the flour, which the complainant had bought of *Roe* and *Davis*, for the West India market, that he (the said *William Lamb*) had sold the flour to *Roe* and *Davis* cheaper than was then the price in Savannah, in consequence of its having lain some time in his warehouse. That a discovery of what the complainant considered as an imposition, induced him to remonstrate with the said *Roe* and *Davis*, who then agreed, that if the complainant would continue his indorsements, his note should lay over until the affairs of their house should be settled, and that they would deduct an overcharge in the flour sold to him, and which they purchased from *William Lamb* ; to all of which the complainant alleges he assented. That during the absence of the complainant in New-York, actions were instituted against him in the Superior Court of this county on the note, by *E. Lloyd*, indorsee, and under these circumstances of his case he prayed for relief, and that an injunction issue to suspend the operation of the judgment obtained against him by the indorsee, *E. Lloyd*.

An injunction was granted to operate until such answers of the defendants came in ; answers have been filed, and they being considered, by the counsel for the defendants, as a full

compliance with the requisition of the writ of injunction, a
motion is now made for its dissolution.   The answer of *E.*
*Lloyd* denies all knowledge or privity of the transactions be-
tween the original parties, *Roe* and *Davis*, and the complain-
ant, *William Smith ;* but that these notes were deposited with
him by *Roe* and *Davis*, as a collateral security or indemnity for
*Lloyd's* indorsement on a note of *Roe* and *Davis*, for twenty-
five hundred dollars.   *Lloyd* farther states, in his answer,
that he does not know whether or not the smaller note of
*Smith* was given to *Roe* as an accommodation note ; that these
notes of *Smith* were indorsed to him before they became due ;
and that a judgment has been obtained against him, by the
bank, on the note of twenty-five hundred dollars, which he
had indorsed for *Roe* and *Davis*, and which he had been indu-
ced to indorse in consequence of the assurance of the letter
of the complainant, of the third of April, 1805, whose note
to *Roe* and *Davis* for two thousand and forty dollars, he had
taken as a security against the effects of such indorsement.
There is nothing in the answer of *A. S. Roe* that controverts
any part of the answer of *E. Lloyd*, or from which a pre-
sumption can be raised, that any of the circumstances of the
dealing or transactions of the original party were communi-
cated to *Lloyd*.   Mr. *Roe* does not appear to know whether
the smaller note was or was not given as an accommodation
paper, or the particular circumstances under which it was
given ; the receipt of *Roe* and *Davis*, however, which is one
of the exhibits of the complainant's bill, expresses that his
smaller note was to be considered as an accommodation note,
or if paid by *William Smith*, was to operate as a deduction
*pro tanto* on the larger note of 2040 dollars.   Upon the whole
of this case, the law is extremely clear, that the indorsee of
a promissory note or bill of exchange, for a valuable con-
sideration, cannot be affected by the frauds or transactions of
the original parties, unless he takes the note with a full know-
ledge of their circumstances, and then the consideration may
be gone into as it might between original parties ; or, after a
bill or note is due, it comes disgraced to the indorsee, it is

GEORGIA,
Chatham Co.
JUNE, 1809.

Smith
vs.
Lloyd and Roe.

GEORGIA,
Chatham Co
JUNE, 1809.

Smith
vs.
Lloyd and Roe

his duty to make inquiry of it ; if he takes it, though he gives a full consideration for it, he takes it upon the credit of the indorsee, and subject to all the equities with which it may be incumbered, by lord Ellenborough, Mict. Im. 48 Geo. 3. Camp. Rep. 19, and though lord Kenyon, in Brown and Davies, 3 Term Rep. 83, thought to take away the right of the indorsee to recover, it must appear on the face of the note to have been dishonoured, or knowledge must be brought home to him that it had been so ; yet *Ashuret* and *Butler* were of the opinion, that in an action against the maker of a promissory note, by a person who has taken it after it was due, the defendant is entitled to the same defence he might have set up against the original payee.   To this doctrine lord Kenyon assented, in Bohem *vs.* Stirling, 7 T. R. 429, and considered it so far settled, that he said he did not wish to set the question afloat again, and that the rule established in Brown *vs.* Davies, ought to obtain in all other cases.

If, therefore, any knowledge of the transactions between the original parties, could be brought home to *Lloyd*, the indorsee ; if he knew that a deduction was to be made from the note of 2040 dollars, in consequence of a difference which ought to have been made in the price of fresh flour ; and state, if he had had a knowledge of the fact, that the smaller note was given as an accommodation paper, or that it was to be deducted from the amount of the larger note upon *Smith* becoming liable for the payment at bank, or, if these notes had been indorsed to *Lloyd* after they became due ; in either case, he would hold these notes subject to all the equities they would have been subject to, in the hands of the original payee ; but the defendant, *Lloyd*, in his answer pointedly denies, that he possessed any knowledge of the commercial dealings between the complainant and *Roe* and *Davis*, or, that these notes were indorsed to him, after they became due.   It is not in my power then to continue this injunction upon any principle of equity which results from this view of the case.   It is very evident, however, that *Smith* has indorsed to accommodate *Roe* and *Davis*, with *additional* in-

dorsements to a larger amount, in consequence of representations, that the larger note was not indorsed by *Lloyd*, nor was deposited in bank ; for if *Lloyd* had indorsed this note, it would have obtained a credit for *Roe* and *Davis* at bank, which would have superseded the necessity of the additional accommodation indorsements of *Smith*, and in consequence of which, judgments have been obtained against the complainant for ————, exceeding the amount of the larger note, indorsed to *Lloyd*, and which was the only debt due by *Smith* to *Roe* and *Davis*. The letter from *Smith* to *Lloyd*, of the 3d April, 1805, says, " I am in debt to *Roe* and *Davis* upwards of two thousand dollars, and, to accommodate them, have given my note payable in sixty days ; they can get the money from bank, provided they had your *additional indorsement* with theirs, which, if you will consent to, I will engage ; eventually you shall not lose a cent." Mr. *Lloyd*, instead of indorsing this note, according to the expectations of the maker, receives it as a collateral security for his indorsement on another note for the accommodation of *Roe* and *Davis*. This is the most mysterious feature of the case, as the pleadings and exhibits present it to me. Was there a greater probability of *Roe* and *Davis'* note with Mr. *Lloyd's* indorsement being discounted, than *Smith's* note to *Roe* and *Davis*, with the weight of the additional indorsement of *Lloyd?* Surely the latter note held out a greater prospect of success in obtaining a credit or discount at bank for *Roe* and *Davis*, and it would have been practicable, as it appears from the answer of Mr. *Lloyd*, to have received from *Roe* and *Davis* notes as a collateral security for the difference of 2,500 and 2,040 dollars. From this it is possible to draw the inference, that *Roe* and *Davis*, by withholding *Smith's* note from the bank, always intended to obtain from him additional accommodating indorsements, under the suggestion, that it was not in bank, or that it would not be discounted. The *suppressis veri* alleged in the bill is, however, denied in the answer of Mr. *Roe ;* the last hold, therefore, which the complainant can take upon an equitable jurisdiction, must be

found in another appeal to the conscience of Mr. *Lloyd*, to ascertain what his motives were for indorsing *Roe* and *Davis*' note, when the same effect might have been produced by indorsing *Smith*'s note; and when he could have been secured from any future liability on the difference between 2,500 dollars and 2,040 dollars, by other notes which *Roe* and *Davis* could have, and actually did deposit in the hands of Mr. *Lloyd*, and to ascertain whether Mr. *Lloyd* had any intimation of the purposes for which *Roe* and *Davis* held *Smith*'s note from the bank. Did he suppose it was with a view of obtaining farther indorsements from *Smith*, by impressing him with a belief that they, *Roe* and *Davis*, could obtain no discount at bank upon the larger note, or, that it had not been deposited in bank. I shall at present presume every thing in favour of the purity and integrity of the motives which governed Mr. *Lloyd*; but considering the hardships which encompass the complainant's case, and that every allowance should be granted that it is within the power of a court of chancery to allow, I shall therefore order and direct.

And it is therefore ordered and directed, that the complainant be at liberty to amend his bill within ten days, so as to obtain a discovery upon the remaining principle of equity, and, that as soon as the answer comes in, the defendant have leave to move in vacation for a dissolution of injunction, giving five days' notice to the complainant's counsel.

In the mean time let the *injunction* continue.

*Noel*, for Complainant.
*Davis* and *Berrien*, for Defendant.